**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

**ENRIQUE CINTRON-ORTIZ**
  **Plaintiff,**

   **v.**

**PUERTO RICO ELECTRIC POWER
AUTHORITY**
  **Defendant.**

**Civil Action No. 08-1564 (GAG)**

## <u>OPINION AND ORDER</u>

Plaintiff in this matter, Enrique Cintron-Ortiz ("Plaintiff") commenced this action seeking compensatory damages and injunctive relief against the named defendant, Puerto Rico Electric Power Authority ("PREPA"), for alleged violations of Plaintiff's constitutional rights.  The action is brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C.  §§ 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et. seq..  Plaintiff also invokes the supplemental jurisdiction of this court to bring claims under Puerto Rico's Law No. 100 of June 30, 1959, as amended ("Law 100"), P.R. Laws Ann. tit. 29, § 146 et. seq. and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 & 1803"), P.R. Laws Ann. tit. 31, §§ 5141, 5142.

Presently before the court is Defendants' motion for summary judgment (Docket No. 60), which was timely opposed by Plaintiff (Docket No. 76).  Defendants filed a reply brief (Docket No. 85), which was also timely opposed by Plaintiff (Docket No. 103).  After reviewing the pleadings and pertinent law, the court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment.

## I. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**Civil No. 08-1564(GAG)**                                  2

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.    Relevant Factual & Procedural Background

Plaintiff began working at PREPA in July of 1987 as a Pensions and Benefits Bookkeeper. In October of 1987, Plaintiff became a Financial Statement and Budget Analyst. Plaintiff currently holds the position of Principal Supervisor at the Retirement System which is a career position. Plaintiff was placed in this position in 1990 and has held this position for nineteen years, save for

**Civil No. 08-1564(GAG)**                              3

a two and a half year period in which he worked as a temporary substitute as a Manager of the Retirement System Loan Department from June, 2005 until October, 2007.

Throughout his tenure as Principal Supervisor at the Retirement System, Plaintiff's immediate supervisor was Angel Arias ("Arias"). Plaintiff regularly complained about his working relationship with Arias. Amongst other complaints, Plaintiff alleged that Arias was not open to ideas or recommendations, that their relationship lacked a professional aspect, and that Arias refused to acknowledge the contributions he has made in his position. As a result of Plaintiff's complaints about Arias, an investigation was conducted into Arias's supervisory behaviors. Following this investigation, Arias was impeded from making decisions and supervising the personnel, including Plaintiff, as of 1989-1990. Plaintiff also testified in his deposition that many of his responsibilities as a supervisor were taken away after 1998.

Plaintiff also complained about his relationship with Otoniel Cruz, Administrator of the Retirement System during the period when Plaintiff was acting as temporary Manager. He claims that following his temporary appointment to the position of Manager, Cruz told him that he did not trust him, which accordingly resulted in a pattern of harassment. The alleged harassment consisted of subverting Plaintiff's authority when dealing with employees under his supervision, leaving him out of the decision-making process in the department, and requiring him to do menial tasks. Plaintiff testified at his deposition that this pattern of harassment ultimately forced him to enter the State Insurance Fund ("SIF") to seek medical treatment in October of 2007. Plaintiff was referred by the SIF for a partial hospitalization at a mental health facility. Plaintiff returned to work in February of 2008. Upon his return from the hospital, and allegedly following the filing of an administrative complaint reporting the alleged discrimination, the harassment intensified as all of Plaintiff's duties as a supervisor were stripped from him.

In his administrative complaint, Plaintiff alleged that PREPA had illegally discriminated against him in its hiring practices. Between 1998 and 2008, Plaintiff applied to several managerial positions within PREPA, but was not chosen for any of these positions. In his deposition, Plaintiff

Civil No. 08-1564(GAG)                    4

testified that he was not chosen for these positions because PREPA discriminated against him based on his age and sex.  Over the years, Plaintiff filed a number of complaints charging discrimination against PREPA's hiring practices.  He filed a charge with the Puerto Rico Anti-Discrimination Unit of the Department of Labor ("ADU") on August 5, 2002.  He also filed two complaints with the Equal Employment Opportunity Office at PREPA on June 27, 2002, and August 8, 2007.  On May 3, 2007, Plaintiff filed a complaint with the Employee Assistance Program at PREPA.  On December 10, 2007, he filed a claim with the Equal Employment Opportunity Commission ("EEOC").  On February 13, 2008, Plaintiff filed the previously mentioned charge of discrimination alleging sex, age, and disability discrimination with the ADU.

PREPA contends that these vacant managerial positions were filled through a neutral program that interviews at least five eligible candidates for a published position.  Once a candidate is selected, the other four applicants who were not selected have a right to appeal the decision. During the eighteen year period in which he alleges he was subject to discriminatory hiring practices, he claims that he was passed over for a "series of positions."  While Plaintiff claims this pattern of discrimination occurred during the entire eighteen year period, specific facts regarding the hiring process are only provided for three of the positions for which he applied.

The position of Assistant Manager for the Analysis Department, was published during the period of April 24, 2008, through May 7, 2008.  According to PREPA, of the twelve applications that were received, only seven of the applicants were qualified for the position.  Two of the applicants, including Plaintiff, were considered ineligible because their driver's licenses had expired. In his deposition, Plaintiff testifies that his license was not out of date as he had updated his file by submitting a new copy of his driver's license on March 11, 2008.  PREPA eventually chose Ms. Mariolga Anglero for the position, justifying the selection based upon her experience and certifications.

In September, 2007, the Department of Payroll published a vacant position for Accounting Manager.  PREPA received sixteen applications in total for this position.  According to PREPA, of

**Civil No. 08-1564(GAG)**                                5

the sixteen applications, only seven of the applicants were qualified for the position. Of the qualified

applicants, PREPA chose five candidates for interviews. Plaintiff was not chosen as a candidate as

he did not have prior experience working in the Payroll Department. The interviewing panel chose

Miguel Gonzalez, a forty-five year old male, for the position, recognizing him as the most qualified

individual for the position.

The full-time position of Loans Department Manager was published from August 6, 2007,

until August 17, 2007. At the time of its publication, Plaintiff was acting as a temporary substitute

in the position, a position he had held since 2005. The candidates eligible for the permanent position

were certified under a recruitment regulation which had been amended and certified on May 31,

2007. According to PREPA, the new regulation omitted the requirement that applicants must have

four years of experience in supervising the technical and specialized areas of the Loans Department.

Due to this oversight, the recruitment regulation was amended to include this requirement on August

15, 2007. PREPA contends that Plaintiff did not qualify for the position since he lacked this

required experience, as he had only reached two years of experience in supervision relevant to the

area of loans. Michelle Lube and Ruth Garcia were considered for the position as they met the

qualifications as specified under the recruitment regulation. Plaintiff challenged the list of qualified

candidates, but the Executive Director denied the grievance and reaffirmed the decision finding that

Plaintiff did not qualify for the position. The position was eventually given to Ruth Garcia.

III.     **Discussion**

         *A.       Time-barred Allegations of Discrimination*

PREPA contends that many of Plaintiff's alleged discriminatory acts occurred outside of the

three-hundred day period of limitations allowed for filing a charge with the EEOC or the ADU under

Title VII and the ADEA. In support of this assertion, Defendant contends that each of the instances

complained of constitutes a discrete discriminatory act for the purposes of assessing the limitations

period. In his opposition, Plaintiff avers that the eighteen years of alleged discriminatory hirings,

when combined with the alleged harassing acts by his supervisors, constitutes an ongoing hostile

work environment and therefore is not subject to the strict three-hundred day filing period as deemed

**Civil No. 08-1564(GAG)**                      6

applicable when considering a discrete discriminatory act.

Under Title VII and the ADEA, a plaintiff must file a discrimination charge with the EEOC within three-hundred days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); American Airlines, Inc. v. Cardoza-Rodriguez, 133 F.3d 111, 122 (1st Cir. 1998). "Discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging the act." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Examples of discrete acts include termination, failure to promote, denial of transfer, or a refusal to hire. Id. at 114. However, a claim of discrimination, brought under a theory of hostile work environment is not subject to the three-hundred day filing period**.** Id. at 117. Instead, "the entire time period of the hostile environment may be considered by a court," as such a claim constitutes a continuing violation exception. Id.

When assessing whether or not a plaintiff has demonstrated the presence of a hostile work environment, the court will consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). Furthermore, a plaintiff must present sufficient evidence demonstrating that the hostile work environment was fostered by harassment based upon a protected class; in this case age and sex. See Torres-Negron v. Merck & Co., 488 F.3d 34, 39-40 (1st Cir. 2007)

In attempting to demonstrate a hostile work environment, Plaintiff describes a number of incidents involving the working relationship between his supervisors and himself, as well as the fact that all of his authority as a supervisor was stripped from him. (See Docket No. 76 at 8-13.) Even assuming that all of Plaintiff's allegations regarding this behavior are true, he has failed to present any evidence that ties these actions to any discriminatory animus based on age or sex. Plaintiff's proffered record is devoid of any evidence that would permit a reasonable jury to conclude that Plaintiff's alleged hostile work environment was the result of age or sex based animus. This glaring deficiency vitiates Plaintiff's claim of a hostile work environment based on the aggregation of these

**Civil No. 08-1564(GAG)**                    7

incidents.  See Cardalda-Sanzhez v. Universidad Carlos Albizu, 2010 WL 597429 (D.P.R. 2010) (quoting Torres-Negron, 488 F.3d at 39-40 (requiring that 'harassment was based on plaintiff's membership of the protected class' for a prima-facie case of hostile work environment under Title VII.")).

In his opposition, Plaintiff points to the Supreme Court's decision in National Railroad Passenger Corp. to support his contention that a hostile work environment will toll the statutory period to file an administrative claim.  In National Railroad Passenger Corp., 536 U.S. at 114, the Supreme Court held that a colorable hostile work environment claim will toll the three-hundred day filing period for those events that occurred outside of this period.  Although noting that it was not ruling on the sufficiency of the plaintiff's hostile work environment claim, the Court pointed to evidence which demonstrated that the plaintiff's managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets.  This finding is inapplicable in this case, as Plaintiff has failed to proffer evidence linking the alleged discriminatory conduct to a protected class, and has therefore failed to demonstrate a hostile work environment based on proscribed discriminatory animus.

As the abovementioned incidents are insufficient to demonstrate a hostile work environment fostered by age or sexual discrimination, Plaintiff's hostile work environment claim rests solely upon the alleged discriminatory hiring practices of PREPA.  Because a failure to promote or hire constitutes a discrete tangible employment action, such claims do not aggregate to create a hostile work environment.  See Ingram v. Brink's, Inc., 414 F.3d 222, 230 n.9 (1st Cir. 2005) ("Failure-to-hire claims . . . generally do not fit into the [continuing violation exception] because the discriminatory act alleged is discrete and cabined as opposed to hostile work environment claims in which the discrimination alleged is itself a culmination of ongoing workplace attributes."); see also Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009) (recognizing that a failure to promote is a discrete discriminatory act that "starts the clock running on the day it occurs.").  Plaintiff is unable to support his theory of an ongoing hostile work environment based solely upon PREPA's alleged discriminatory hiring practices.  Therefore, all of Plaintiff's alleged incidents of

1  **Civil No. 08-1564(GAG)**                            8

2  hiring discrimination that occurred more than three hundred days prior to his December 10, 2007

3  and February 13, 2008  filings with the EEOC and ADU respectively, are considered time-barred

4  for purposes of his Title VII and ADEA claims.  Accordingly, only the alleged discriminatory

5  practices surrounding the hiring of the positions of Loans Department Manager (published August

6  6, 2007), Payroll Manager (published September 26, 2007), and Assistant Manager (published April

7  24, 2008), will be considered by the court in assessing the validity of Plaintiff's claims.

8          ***B.      Plaintiff's Title VII and ADEA Claims for Discrimination in Hiring Practices***

9          Plaintiff alleges that he was passed over for promotions within PREPA on three separate

10  occasions because of sex and age discrimination.  In support of this contention Plaintiff avers that

11  PREPA did not follow its anti-discrimination policies in its hiring practices, and went so far as to

12  manipulate and subvert its policies so as to exclude Plaintiff from the possibility of promotion.

13          Supreme Court precedent dictates that if a plaintiff is unable to demonstrate direct evidence

14  of sex discrimination, he/she must proceed under the McDonnell Douglas burden shifting analysis.

15  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); McDonnell Douglas Corp. v.

16  Green, 411 U.S. 792 (1973).  The plaintiff must start by first establishing a *prima facie* case of sex

17  discrimination.  To establish a *prima facie* case under Title VII, the claimant must show the

18  following: (1) that the plaintiff belongs to a protected class; (2) that the employer took an adverse

19  employment action against the plaintiff; (3) that the plaintiff was qualified for the position that he

20  applied for; (4) that the position remained open and the employer hired or promoted other

21  individuals with the claimant's qualifications or less qualified individuals. Hicks, 509 U.S. 502, 506

22  (1993). After establishing the *prima facie* case, the burden of production shifts to the employer to

23  provide a legitimate nondiscriminatory reason for the adverse employment decision.  See Hicks, 509

24  U.S. at 506-07.  If the employer does so, the burden then returns to the plaintiff, who must make a

25  showing that the defendant's explanation was merely pretext and that the real reason for the adverse

26  action was discrimination based on the plaintiff's membership in a protected class.  See Thomas v.

27  Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999).

28          The presentation of indirect evidence of age discrimination under the ADEA follows a

**Civil No. 08-1564(GAG)**                               9

similar framework.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000);

Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113 (1st Cir. 1993) (citations omitted).  To

establish a *prima facie* case under the ADEA framework, a plaintiff must prove four elements: (1)

that he was over 40 years old; (2) that he has met his employer's legitimate job expectations; (3) that

the employer took adverse action against him; and (4) that the employer did not treat age neutrally

or retained persons not within the protected class in the same position.  Gonzalez v. El Dia, Inc., 304

F.3d 63, 68 n. 5 (1st Cir. 2002).  Once the *prima facie* case is established, a claim under the ADEA

follows the same burden shifting framework as applied to a Title VII claim.  See Velez v. Thermo

King de Puerto Rico, Inc., 585 F.3d 441, 446-47 (1st Cir. 2009).

Plaintiff describes three separate incidents in which he claims he was subjected to  PREPA's

discriminatory hiring practices.

### 1.    Assistant Manager Position

Plaintiff contends that he was discriminated against in his application for the position of

Assistant Manager because he is a male.  The position was awarded to Mariolga Anglero

("Anglero"), a female, who Plaintiff claims he has supervised in the past and who allegedly has less

experience than himself.  As Plaintiff is unable to produce direct evidence of discrimination, he must

present his claim under the McDonnell Douglas burden shifting framework.  PREPA contends that,

because Plaintiff's license was expired at the time that the position of Assistant Manager was

published,  he is unable to demonstrate the third prong of the *prima facie* case; that he was qualified

for the position that he applied for.  In his deposition, Plaintiff contests that his license was expired

and offers a stamped document containing a copy of his license as proof that he had submitted a

renewed copy of license to the Personnel Department.  (See Docket No. 76-13 at 34, l.14-19; Docket

No. 76-9.) Based on the presented evidence, the court finds that Plaintiff has at least created a triable

issue of fact as to whether or not his driver's license was updated at the time he submitted his

application, and therefore finds that he has satisfied the elements of his *prima facie* case.

As Plaintiff has satisfied his prima facie case, the burden of production then shifts to PREPA

to offer a non-discriminatory reason for the hiring decision.  PREPA contends that, given her

**Civil No. 08-1564(GAG)**                    10

experience and qualifications, Anglero was hired because she was the most qualified individual for the position.  In Plaintiff's Opposing Statement of Material Facts and of Additional Facts (Docket No. 77 ¶ 21) he states that he was better qualified than Anglero for the position of Assistant Manager.  However, Plaintiff provides no evidence supporting this assertion.  Instead, he attempts to support this factual assertion with a document describing the required qualifications of an applicant for the position of Assistant Manager.  (See Docket No. 77 at 3 ¶ 21; Docket No. 76-10.) This proffered evidence does not satisfy Plaintiff's burden to demonstrate that PREPA's stated reasons were pretextual, let alone that the alleged pretext was used to obscure sex-based animus. See Rathbun v. Autozone, Inc., 36 1F.3d 62, 74 ("[I]n the absence of strong objective evidence (e.g., test scores), proof of competing qualifications will seldom, in and of itself, be sufficient to create a triable issue of pretext.") (citations omitted).  In assessing the evidence presented by Plaintiff, "this claim boils down to [Plaintiff's] claim that he was more qualified for jobs that went to others. However, courts in employment discrimination cases may not act as 'super personnel departments,' substituting judicial judgments for the business judgments of employers." Id. (quoting Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007)).

Plaintiff's claim fails as he is unable to to sustain his burden under the McDonnell Douglas burden shifting framework by presenting evidence demonstrating that PREPA's stated reasons were pretext for sex-based discrimination.  See Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008) ("[T]he ultimate burden on the plaintiff is to show that discrimination is the or a motivating factor, a showing which may, but need not be, inferred, depending on the facts, from the showing of pretext.") (internal citation omitted).  As Plaintiff is unable to present sufficient evidence to demonstrate the his employer's stated reason was pretext, his claim of discrimination with regards to the filling of the Assistant Manager Position is hereby **DISMISSED.**

### 2.    Accounting Manager Position

Plaintiff also contends that he was discriminated against in his application for the position of Accounting Manager because of his age.  The position of Accounting Manager was published during the period of September 26, 2007, through October 9, 2007.  The Personnel Division issued

**Civil No. 08-1564(GAG)**                    11

a list of qualified candidates for the position composed of eight candidates including Plaintiff. Prior to interviewing the candidates, a panel evaluated which of the candidates had previous experience in the payroll department and had used the KRONOS system. Accordingly, the panel selected five of the eight candidates to interview, excluding Plaintiff and one other candidate, who did not have prior experience in the Payroll Department. PREPA ultimately chose Miguel Gonzalez ("Gonzalez") for the position. At the time that he was hired, Gonzalez was over forty-five years old, but was ten years younger than Plaintiff.

Assuming that Plaintiff has successfully established a *prima facie* case of discrimination under the ADEA, he once again is unable to satisfy his burden to demonstrate that PREPA's proffered reason for its action was pretextual. PREPA avers that Gonzalez was chosen for the position because the interviewing board found him to be more qualified for the posted position than the other qualifying individuals. Plaintiff is unable to present any evidence calling into question the veracity of PREPA's contention. In fact, in his deposition, Plaintiff testifies that he was not aware of the qualifications of Gonzalez at the time he was selected for the management position in the Payroll Department. (See Docket No. 65-2 at 82.) Therefore, while Plaintiff may have been qualified for the management position at the time of its publication, he has not presented any evidence to contest the sincerity of PREPA's determination that Gonzalez was more qualified at the time that the decision to promote him was made. See Rathbun, 361 F.3d at 74 ("When an employer claims to have hired or promoted one person over another on the basis of qualifications, the question is not which of the aspirants was better qualified, but, rather, whether the employer's stated reasons for selecting one over the other were pretextual.") (citing Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996)). Furthermore, Plaintiff's only proffered evidence demonstrating age discrimination by his employer is his deposition testimony in which he asserts that a similar pattern of discrimination was taken against Robert Lugo, another PREPA employee over the age of forty. However, this assertion, unsupported by any evidence on the record, is insufficient to satisfy Plaintiff's evidentiary burden to demonstrate age-based animus on behalf of his employer. Plaintiff is unable to proffer any evidence of other instances of age discrimination that would permit the court

**Civil No. 08-1564(GAG)**                    12

to infer that PREPA's reasoning was merely pretext for a pattern of discriminatory intent.  See

Varela Teron v. Banco Santander de Puerto Rico, 257 F. Supp. 2d 454, 462 (D.P.R. 2003)

(dismissing ADEA claim when plaintiff was unable to present any "discriminatory remarks or any

other shred of evidence from which a rational fact finder could infer the requisite discriminatory

intent.").  Therefore, Plaintiff's claim of age discrimination with respect to PREPA's filling of the

position of Accounting Manager is **DISMISSED**.

3.     <b>Position of Loans Department Manager</b>

Plaintiff also contends that he was discriminated against in the selection of the Loans

Department Manager.  Plaintiff had occupied this position on a temporary substitute basis starting

on June 5, 2005, and ending October 26, 2007.  According to the employee manual, an individual

holding the position as a temporary substitute need not have the necessary experience required for

the permanent position, nor will they necessarily be permanently appointed to that position once the

opening is published.  (See Docket No. 69-8 at 1.)  Additionally, once the position has been

published, the individual occupying the temporary position must still meet the necessary

qualifications of the position to be considered for permanent placement. Id.

The position of Loans Department Manager was published for the period beginning August

6, 2007, until August 17, 2007.  On May 31, 2007, and again on August 15, 2007, PREPA revised

its recruitment regulations, adding the requirement that an applicant must have four years of

experience in the Loans Department to be considered for the permanent position of Loans

Department Manager.  Plaintiff applied for the permanent position, but was told by PREPA that he

did not qualify because he lacked the requisite experience in the Loans Department to be considered.

Plaintiff avers that the changes made to the recruiting regulations were adopted in an effort to further

defendant's discriminatory campaign by amending the regulation to only include the qualified female

applicants. In support of this contention, Plaintiff offers a letter from a Human Resources Examining

Officer, in which it is confirmed that prior to the amendment of the recruitment regulation, Plaintiff

was qualified for the position of Loans Department Manager.  (See Docket No. 76-7 at 5.)  This

investigation was conducted in response to Ruth Garcia's (a PREPA employee) administrative

**Civil No. 08-1564(GAG)**                           13

challenge of Plaintiff's qualifications during his temporary appointment to the position.  PREPA

contends that the letter's findings were based on an erroneous recruitment regulation which listed

the necessary experience for the position of Benefits and Pension Manager and not for Loans

Department Manager.  Thus, argues PREPA, the regulation was amended on May 31, 2007 and then

again on August 15, 2007 to correct this error.  (See Docket No. 69-10 at1-4.)

        Based on the language of the amended recruitment regulation, it appears that Plaintiff is

unable to establish a *prima facie* case of sex discrimination, as he was not qualified for the position

of Loans Department Manager at the time of his application.  Plaintiff does not contend that he had

the required experience as indicated by the amended regulation.  However, even assuming that

Plaintiff has presented sufficient evidence to create a triable issue of fact as to whether or not he was

qualified for the position, Plaintiff has once again failed to satisfy his evidentiary burden under the

McDonnell Douglas burden-shifting analysis.  Because PREPA has proffered a legitimate non-

discriminatory explanation for the amendment of the recruitment regulation (see Docket No. 69-10

at 1-4), the burden then shifts back to Plaintiff to present evidence that the provided reason is

pretextual.  Plaintiff has once again failed to present any evidence that would permit the court to

infer that PREPA's stated reason for amending the regulation was merely pretext used to obscure

sex-based discrimination.  Without this essential showing, Plaintiff's claim suffers the same

deficiency as those previously discussed.  See Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st

Cir. 2006) ("[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's

justification; he must elucidate specific facts which would enable a jury to find that the reason given

is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of

discrimination.") (citations omitted).  As Plaintiff has failed to meet this evidentiary burden, the

court **DISMISSES** his claim of sex discrimination with respect to PREPA's handling of the hiring

of the  Loans Department Manager.

    **C.      *Plaintiff's Claim of Hostile Work Environment***

        The merit of Plaintiff's hostile work environment claim was thoroughly discussed in Section

A of this opinion.  Per this discussion, Plaintiff's claim of hostile work environment is **DISMISSED**

**Civil No. 08-1564(GAG)**                     14

as he is unable to formulate a *prima facie* case of hostile work environment discrimination.

> **D.      Plaintiff's Retaliation Claim**

Plaintiff also pleads a retaliation claim under 42 U.S.C. § 2000e-3(a), which "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 60 (2006) (citing 42 § 2000e-3(a)).  A Title VII retaliation claim, like a gender discrimination claim, is generally governed by the McDonnell Douglas burden-shifting scheme.  See Lockridge v. The University of Maine System, 597 F.3d 464 (1st Cir. 2010) (citing Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004)).  To prove a *prima facie* case of retaliation Plaintiff must allege that: (1) he engaged in protected conduct under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity. Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009).  An employee has engaged in activity "protected by Title VII" if she has either "(1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Id. (internal citation omitted). Causation in a retaliation case can be shown through knowledge of the protected activity coupled with proximity in time to the adverse employment action.  See Calero-Cerezo, 355 F.3d at 25 (1st Cir. 2004).

Because Plaintiff does not have direct evidence of retaliation, he must once again proceed under the McDonnell Douglas burden-shifting framework.  Plaintiff avers that soon after the filing of his February 2008 complaint, he was stripped of all of his duties as a supervisor. (See Docket No. 76-13 at 6, l. 14-16.)  Based on the nature of the adverse actions taken by Plaintiff's employer, as well as their proximity in time to the filing of his complaint, the court finds that Plaintiff has

Civil No. 08-1564(GAG)                    15

presented sufficient evidence to satisfy his *prima facie* case of retaliation under Title VII.[1]  See Mariani-Colon v. Department of Homeland Sec. ex rel., 511 F.3d 216, 224 (1st Cir. 2007) (finding the temporal proximity between allegations of discrimination and the adverse action "sufficient to meet the relatively light burden of establishing a prima facie case of retaliation.").

As Plaintiff has established his *prima facie* claim, the burden shifts to PREPA to provide a legitimate non-discriminatory reason for the adverse employment action.  After reviewing its evidence and submissions to the court, PREPA has failed to provide any legitimate non-discriminatory reason for removing all of Plaintiff's supervisory duties.  Thus, Plaintiff's *prima facie* case is sufficient to create a triable issue of material fact to send to the jury.  See Bajana v. Potter, 396 F. Supp. 2d 78, 89 (D.P.R. 2005) (finding *prima facie* case sufficient to defeat summary judgment when defendant failed to proffer legitimate non-discriminatory reason for adverse actions); see also Aguayo v. R.J. Reynolds Tobacco Co., 670 F. Supp. 1094, 1097 (D.P.R. 1987) ("A prima facie case may indeed be sufficient to establish a valid claim against an employer, where the defendant has not offered a non-discriminatory reason for the [adverse action].").  Therefore, the court **DENIES** PREPA's motion for summary judgment with regard to Plaintiff's Title VII retaliation claim.

### E.    Local Law Claims

Although PREPA did not specifically move for dismissal of Plaintiff's state law claims, this court has held that "to the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using that same conduct to also bring a claim under Article 1802." Rosario v. Valdes, 2008 WL 509204, *2 (D.P.R. 2008); see also Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1 (1994).  As Plaintiff's pleadings contain no independent conduct by PREPA that

---

[1] Although the court has found that Plaintiff has not provided sufficient evidence to demonstrate illegal discriminatory hiring practices by PREPA, such a finding is not necessary for a Plaintiff to succeed under a Title VII retaliation claim.  See Fantini, 557 F.3d at 32 (to establish a successful retaliation claim plaintiff need only have a good faith, reasonable belief that the conditions protested against actually amounted to a violation of Title VII) (citations omitted).

**Civil No. 08-1564(GAG)**                        16

would permit him to bring a successful Article 1802 claim under Puerto Rico law, the court is compelled to **DISMISS** Plaintiff's claims under Articles 1802 & 1803 of the Puerto Rico Civil Code.

**IV.     Conclusion**

For the foregoing reasons, the court **GRANTS in part and DENIES in part** PREPA's motion for summary judgment.  The only claims remaining before this court are Plaintiff's Title VII retaliation claim as well as his Law 100 claim.  All other claims are **DISMISSED** with prejudice.

**SO ORDERED**

In San Juan, Puerto Rico this 29th day of June, 2010.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge